23-1192. Good morning, counsel. Good morning, your honor, and may it please the court. Craig Kislarich on behalf of the appellant, Danny Cruz, if I may please reserve five minutes for rebuttal. Sure. Danny Cruz never received the benefit of his bargain. He gave up his right to trial, his right to advocate for certain lower sentences, and ostensibly his right to appeal in exchange for an offense level of 14, which would set both a ceiling and a floor for what the parties were allowed to advocate for at sentencing. There was also language in the plea agreement. It would set a floor to the guideline calculations. Correct. As to what the parties could advocate. All right. Now, let's talk about two possible breaches here. The first one, we've got this problem because they're this off-the-record conference. So how are we supposed to know what happened there? What course do you suggest for that? In a subsequent filing from the government, prior plea counsel for the government did indicate that he had initially concurred with the PSR calculation. So we do have in record from the government that there was a concurrence with this additional four-level enhancement. Okay. So we have the off-the-record one, which you argue is a breach. Let's talk about the second on the record, where the government takes no position. Would that have been a breach on its own? Our position is yes, that was an independent breach in that the plea agreement required an affirmative recommendation for a level 14. And that is addressed. What about the government's sentencing memorandum where they summarize the law, but in essence took no position? Is that a breach? Yes, in that no position was taken on the enhancement. And this case is most analogous to the Brown decision out of the Eighth Circuit, where there was an agreement for a level 12. The probation department came back with a recommendation for a calculation of a level 20. Ultimately, the government advocated first in favor of that enhancement, but then took this tepid position of we take no position on the enhancement. And that was reversed and sent back. Let's ask about this. Let's say the government had said, yes, we think there should be a level 14. And then the court asks, okay, but I want to know, you know, how about this other enhancement? And in response to the questions, the government says there would be a substantial case for that enhancement on these facts. Would that have been a breach? Yes, that would be a breach as well in that the plea agreement ties the hands of the government. Except we got this problem. The plea agreement is a contract with the prosecution of defense, but contracts can have terms that are void against public policy. Doesn't public policy require that the sentencing court be able to get all possible information that the parties can't fact bargain with no consequences? That if they ask, how can we say that we, the appellate court, are going to enforce an agreement that deprives the trial court of what it's inquiring into? That's not what happened here, but we have to figure out how to write this opinion. Correct. And nothing in the plea agreement would tie the hands of probation or the court to not make its own calculation as to the sentencing guidelines. And ultimately it is within the purview of the government and it's not prohibited by the plea agreement to submit the necessary facts in order for probation to do that. The government can be bound to giving certain factual answers. Let's say they ask, well, wasn't this person a public official? And is the government supposed to lie and say no if there's some fact that would support some other enhancement? Nothing in the plea agreement would require that the government be untruthful with the court. That would, of course, be a severe ethical breach. But wasn't your position that the government had an obligation to advocate? To affirmatively advocate for what it agreed to, which was the level 14. But doesn't that go speak to Judge Bevis' point that by advocating for that, they're in essence saying that you shouldn't apply the four points to this public official? Well, if that provision is against public policy or somehow invalid, then our remedy would still be the proper one, which is to withdraw the plea because this would be more of a miscarriage of justice situation in that Mr. Cruz asked for this, terms were negotiated, and ultimately the government was unable to honor that. But what's Mr. Cruz asking for? He is asking to withdraw his guilty plea, which he is not. And I know case law from other circuits does vary as to the question of remedy. It seems that in cases where the defendant wants specific performance, that has been granted. In cases where the defendant does not want specific performance and wishes to withdraw entirely, that that would be the viable remedy. He wants to withdraw his plea and plead open or go to trial? He's indicated an intent to go to trial, yes. In light of what happened here and the perhaps miscarriage of justice that occurred in that he was denied the benefit of his bargain. What do you think should be the ordinary remedy? Do you think that the defendant should have a choice whenever the government breaches? Aren't there going to be some situations in which it is enough to order specific performance? In cases where the defendant would like the benefit of their bargain and stick with the plea agreement that they already agreed to, that would be the appropriate remedy. But in a case such as this one where Mr. Cruz wishes to withdraw his guilty plea and proceed to trial, that is ultimately something that can't be forced of a defendant to seek to withdraw his guilty plea, but he does make that request here. Okay. So was this breach, you argue that there was a breach both times. Was the breach curable? In theory. At those moments, if someone had pointed out, oh, this is a breach, is there anything the government could have done to undo that? If it had been timely corrected, Your Honor, I mistakenly concurred with this. I affirmatively recommend a level 14. If that had happened in that language, in a timely manner, we would take the position that cure is possible. That is consistent with the weight of case law from other circuits. Okay. Now here, was there any retraction? Anything that was unambiguous, unequivocal? Well, there was the taking of no position on the enhancement by way of sentencing memorandum, and we also have the sentencing transcript wherein the prior counsel for the government indicates that the range resulting from a level 18 was fair and appropriate, which that's contrary to a different provision of the plea agreement wherein it says the parties agree that the resulting range from a level 14 is reasonable. Okay. So there's no retraction, let alone one that's unambiguous or one that's... No. I believe the taking of no position was intended as an effort to cure, but we would submit that it was inadequate. How would you show meaningful harm? Why should we infer that it's harmed, Mr. Cruz? Well, going back to the case law, there isn't a harmlessness error review. It does not matter if the breach was inadvertent, and it does not matter if the court was unlikely to be persuaded by the breach. That actually comes from this court's case in Martin. Well, but surely we're going to have some limits. If a defendant were, of some error, some defendant is up against a mandatory minimum, you wouldn't submit that we have to reverse in that situation, would you? Well, the government could be bound to not seek a mandatory minimum in an appropriate case. No, no. It's been charged. The defendant is pleaded guilty to something with a mandatory minimum. The plea agreement has the government recommending a sentence that's below the mandatory minimum in a case where there's no exception to the mandatory minimum. It's not waivable or something. Surely, at least in that case, we'd say no harm, no foul. The court was bound, whatever the government said, to give the 10-year mandatory minimum. Well, returning to the Martin case, there is the idea that public policy does favor resolving cases amicably by way of plea agreement, and defendants should get the benefit of their bargain. Ultimately, does that make a difference? Does it move the needle with the sentencing court? It does not have to, but the defendant is entitled to specific performance from the government,  You guys argue some about what Santabello and Puckett, how we should fit these two together. Puckett's more recent. Puckett suggests some breaches are curable, and you're on board with that. You're not suggesting some kind of Santabello rule that we always need to send these back? We are not suggesting a hard rule that cure is impossible. The case law does identify circumstances in which cure is quite possible and was found to have occurred. Our position is inadequate in this case. Let's assume you're sentencing in the first instance. Probation is sent to report to the judge, identifying those four points, and giving the judge some support for those points. The judge turns to the government at sentencing and says, what's the government's position here? Should the government at that point say we take no position, or should the government acknowledge that there is this body of case law supporting these four points? I think in that particular scenario, the government would have had here, right? That's what you have here. Correct. And ultimately, the government took no position. We would submit that while acknowledging the plea agreement, the government is now prohibited from submitting facts to probation in order for a full adjudication. The government at sentencing, the judge directly asked the AUSA, hey, look, what do you make of this report? What do you make of the facts in this case? And what do you make of the case law? The probation is brought to my Is the government then bound by the plea and say, well, we can't support those four points? They are bound in the conclusion that they ask of the court. Nothing in the plea agreement precludes submission of police reports or case law or things of that matter. But ultimately, the plea agreement does require. What does that mean? The government can say, well, it should be a 14, not an 18? That would be adequate. That would be adequate to satisfy the plea agreement. And that did not occur here. I get that. But let's assume the government, everybody in the room knows that these four points are appropriate under the guidelines. Your position is the government has to take the position that this should be a 14. If that is what they agreed to in order to induce a plea, yes. OK. My time is concluded. I thank you all. We have we have two cases that may be somewhat inconsistent. Larkin and Rivera. Um. Any thoughts on that? Well, in in our principal brief, we did argue Rivera extensively regarding the factors that are appropriate for withdrawal of of a guilty plea. And ultimately, the court ordered supplemental briefing on the question of cure. Now, Rivera and Luckett, they they are not identical. Ultimately, we we have argued by way of our principal brief that the court should have granted the withdrawal based on the breach. OK, one more question. Let's assume we agree with you and say, OK, Mr. Cruz is entitled to withdraw his guilty plea. We send it back to the same judge. Well, that is the alternative remedy envisioned by some of the case law on point from other circuits, that there are two separate remedies. One is to remand for resentencing by a different judge. The other is to withdraw the guilty plea. We would submit that the cat is somewhat out of the bag here. The government has made their true intentions known and sentencing by another judge in a very small percentage where there are only two full time Article three judges would essentially be no remedy at all. What if we what if we brought in some other judge to sit by designation, even if we we don't normally impute that kind of thing? But let's say we went with you. Surely there's a way to fix this. Bring in a judge from the courthouse over. That is a remedy available under the case law. We would prefer withdrawal of the guilty plea, but ultimately remedies for the court to decide. Thank you. Mr. Hogsby. Good morning. Good morning, Your Honor. I'll try that myself. May it please the court. Christian Hogsby on behalf of the United States. The government did not breach its plea agreement with Danny Cruz by initially agreeing with the That's not a breach at all. Under the plea agreement? No, Your Honor. It's flatly inconsistent with the government will recommend the total offense level of 14. The government did make that recommendation for total offense level of 14. That paragraph in paragraph 13, where the parties have laid out two agreements, one for the base level and one specific offense characteristic is immediately followed up with a sentence that provides that each party reserved the right to make whatever other arguments it wanted with respect to the application of the guidelines to the defendant's conduct. Okay. You drafted this plea agreement, your office, right? Yes, Your Honor. Contra preferentum. We normally construed against the drafter. Cruz reasonably relied on the way that you drafted it and thought that this 14 was worth something. The way you're describing it would have been illusory. I disagree with that characterization, Your Honor. If I could just for a moment try and draw this our discussion into the Rivera case that Judge Sirica brought up at the tail end of argument a moment ago. In Rivera, the parties had agreed that the offense level was 35. The probation office came in and said that the offense level was 39. The government concurred with probation's recommendation regarding the higher offense level, and it's relied upon a provision in the agreement regarding its ability to argue for sentencing. Isn't that what happened here at the first off-the-record colloquy? Well, it was a different prosecutor. Maybe it was inadvertent or whatever, but the different prosecutor took a position advocating this additional enhancement that would have made the total offense level 18, not 14. Your Honor, I agree to a point. I would take issue with the use of the word advocating. In the context of this proceeding, I think it's important, Your Honor. It was untranscribed, unrecorded. There is agreement between the parties that there was a statement made expressing agreement with the probation officer's inclusion of that four-level additional enhancement. So the government, as a frontline argument, there was no agreement in the plea agreement specifically regarding that offense conduct enhancement. I do think that it's important to focus on the fact that the very next sentence after the parties' agreement, with respect to the base offense level and the specific offense characteristics, that sentence immediately follows that initial agreement. And at the change colloquy, that was gone over with Mr. Cruz, and he and his counsel expressed understanding with that aspect of the plea. So he's essentially writing it out. It would be a weird usage of total to mean partial. Your Honor, I can't argue too much about that. I think the parties have agreed, at a minimum, it was inartful drafting. Okay. And we would normally hold that against the and given that you drafted it and given that we don't have a record of it, you know, I'm inclined to see that as a breach. So if that's a breach, at the second hearing, the prosecution took no position. It didn't recommend anything, right? Well, the party's recommendation was still there, Your Honor. In writing. But when asked, the probation says 18 and the prosecution says we're not taking a position on what the total offense level should be, right? The government had taken a position on 14, consistent with the plea. When at this hearing had the government taken a position on 14? It took that position in the plea agreement itself, Your Honor. In writing. But then, when talking at the hearing, the government says, I take no position. I think if we go through a chronology, Your Honor, it might help. Okay. The plea agreement provides the parties' joint recommendation regarding an offense level of 14, reserving to the parties the right to make other arguments with respect to application of the guidelines. Probation prepares a pre-sentence report. Probation officer recommends an additional four-level enhancement. Court convenes a pre-sentence conference off the record to take the party's temperature. Let me ask you about that. In that jurisdiction, are these off-the-record conferences typical? Your Honor, I don't know if I would say that they are typical. I do practice before the judges in trial cases as well. I know that in some instances, and I think many instances, those proceedings are transcribed. I'm not sure why in this instance it wasn't, Your Honor. And at that brief pre-sentence conference, the court essentially is taking the party's temperature on what's stated in the pre-sentence report. And you're right, Judge Bevis. The government did initially acknowledge agreeing with the probation officer's reasoning with respect to that four-level enhancement. Okay. So why, number one, why isn't that a breach? Number two, even if it isn't a breach, why is that enough to cure if we believe that the first time was a breach? Your Honor, for the reasons that I started out talking about, the government maintains that that was not a breach because the government does favor other sentencing applications that might apply. But if, as Your Honor is asking me to assume, that that was a breach, it was almost immediately retracted, Your Honor. The court directed that the parties file briefs on this issue. Mr. Cruz filed the first sentencing memorandum restating his position with respect to that enhancement. And then the government responded, and I believe it was September of 2021. At the outset of the government's brief, out of an abundance of caution and acknowledging some confusion that may have been caused at that pre-sentence conference, the government maintained a position, maintained no position with respect to probation's recommendation that a four-level enhancement above the party's 14-level recommendation would apply. But then what did Cruz bargain for? Am I understanding he bargained for the government advocating 14? And so if the government takes no position, what was he bargaining for? Mr. Cruz is reading more into this agreement, Your Honor, than the agreement can support. Nothing in the agreement required that the government either take steps to advocate further in favor of the 14-level that the parties initially agreed upon. Moreover, nothing in the agreement required that the government advocate against a four-level enhancement that probation had recommended, particularly where, as Judge Bevis noted, the law on this was relatively clear. So what the government did in its sentencing memorandum is neutrally and dispassionately identify relevant law with respect to the four-level enhancement, and particularly whether county corrections officers could be considered high-level public officials. The government emphasized in that sentencing memorandum that it took no position, and it made no argumentation within that memorandum as to the application of the enhancement. Several months later, the Court ruled. That was in January of 22. And at sentencing, the Court announced its ruling. One thing I would in this case. And this issue regarding the four-level enhancement had come up with respect to its application as a specific offense characteristic. And so the parties already knew where the Court was leaning on this issue by the time they arrived at their sentencing memos and when they went to sentencing. So when the parties convened for the sentencing hearing in January, the government once again made clear that it took no position. And in fact, that position was made clear in response to questioning from the Court saying, you might understand that consistent with the plea agreement, the government takes no position. So if we think prejudice is part of this analysis, and your friend on the other side has explained why we shouldn't, is there reason to think that Mr. Cruz got the benefit of his bargain, that he wasn't, that ultimately nothing changed, that the district court was set on this result or something to that effect? Mr. Cruz certainly got the benefit of his bargain with the government, Your Honor. The government at all times maintained its position on the level 14. It did not advocate against the pre-sentence report's contrary calculation. But let's assume we disagree, and we think there was a breach the first time, either the second time was a breach, or at least it wasn't unambiguous enough, unequivocal enough to cure it. Setting that aside, is there any reason to think that the sentence, the court had made up its mind, the court was going to follow a probation office regardless, it didn't really matter what the government advocated for? Your Honor, I would submit that review of the sentencing transcript makes that pretty clear. The district judge in this case indicated that it believed that an offense was well justified, given Cruz's history of recidivism and given the offense conduct in this case that it was made aware of through the pre-sentence report's accurate factual summary of the smuggling and bribery activity. Let's just say we disagree with all that. Let's say we think there were breaches both times. We think that it was hardly unambiguous what the government took back. Maybe you would have gotten the same sentence or not, but we can't be confident of that. If we think there ought to be a remedy, does the government have a position and explanation as to the remedy, whether the remedy ought to be withdraw the plea, specific performance, send back to a different judge, send back to the same judge? You've heard your friend on the other side express a preference for withdrawing the plea and going to trial, but also some reason to think why a different judge, he said at least in a different district, might, you know, counteract anything. Is there any reason why, you know, Mr. Cruz should have a choice of remedies, should not have a choice of remedies, the court ought to elect, like how would the court elect if we did? If I'm tracking you, your honor, I'm to assume that you found breaches across the board. Assume the breach is not cured, right? And that whatever you did, we can't have confidence in the outcome, etc. And we're going to do something to undo this. What, how should we think about the remedial question? Assuming a breach and assuming it can't be cured, the government would request... Or it could have been cured, but it wasn't cured in this case. Understood, your honor. Assuming a breach that was not cured, the government would submit that the appropriate remedy would be to have the case remanded for sentencing in front of a different judge, perhaps with instructions for the government to make clear on the record that it stood by its recommendation, the assumed recommendation here. Again, the government maintains that it had the right to argue above it, but if that were the court's position, to make clear on the record that it was advocating in favor of a level 14 offense level, and then the parties would be free to argue for whatever sentence they wanted. And I think that's actually a fairly important, that's a point I was, I'm hoping to make before my time runs out, your honor. In Mr. Cruz's letter brief that was in response to the eight cases that your honor circulated to the parties, for the first time, Mr. Cruz argues that the government breached the plea agreement by its advocacy at sentencing. And that was never made before the district court. That argument was never presented to the district court. The parties had the benefit of Judge Conner's ruling with respect to the application of the enhancement. They knew what the new guidelines were. They agreed on those calculations. The government made a recommendation in favor of a sentence, left it really to the court's discretion, suggested that a sentence within the guideline range would be appropriate. And Mr. Cruz never objected to that on the grounds that that was an in breach. That's significant, your honor, because in Mr. Cruz's brief to this court, he never raised that issue. He never raised that issue. And he elected not to file a reply brief. So at a minimum, we would submit that that aspect of Mr. Cruz's argument has been forfeited, if not waived. And so the sole breach at issue in this case, fairly construed, is the question about whether at a pre-sentence conference, the government's initial baseline reaction to the pre-sentence report that it agreed with the probation officer's calculation, whether that was a breach. If it wasn't, and the government submits it was not, the appeal waiver in this case should be enforced and the appeal dismissed. If your honors are to determine that that was an initial breach, the government maintains that it was cured and that the government's taking no position on the case was not a breach, that it was not obliged to go Larkin's really actually, this case is actually really better for the government than Larkin. In Larkin, the government had agreed affirmatively that an enhancement did not apply. There's not the same language in the plea agreement here. Nevertheless, when the probation officer came in with that specific offense characteristic, the government agreed with it and submitted a memorandum providing the court with the benefit of the applicable law on it. Paragraph 19 in this plea agreement expressly reserved the right to do, for the government to do just that, and the government did it. But differently than Larkin, the government, well as in Larkin, the government took no position on the application of it. And this court found that that was consonant with the government's commitment to the defendant in the plea agreement and was entirely appropriate. And as Judge Bibas suggested, you know, whether it's public policy or simply a duty of candor to the court, the government is obliged to respond to the court's request for, at minimum, the applicable law governing the enhancement. And that's what the government provided. That is consistent with the government's ethical and professional obligation, and it's fully consistent with the plea agreement in this case. For all of those reasons, Your Honor, we recommend, or we request, that you find no breach, that you enforce the terms of the plea waiver, and that you dismiss the appeal. Thank you. Just a few points for rebuttal. Regarding this other language in the plea agreement, which is somewhat boilerplate in nature, the case law provides that the plea agreement is to be strictly construed against the government as the drafting party. The Purser case finds that, as does the Legion or Ligon case. I'm not sure how to pronounce that appellant's name. The question came up about the off-the-record conference. It should be noted that the off-the-record conference was scheduled by the sentencing judge in observing that there likely was a breach in concurring with the four-level enhancement. That was the purpose of the conference was to address that. And ultimately, briefing was ordered on the question. You're saying the sentencing judge or the district court judge made a comment that there was probably a breach? It was scheduled. It was a telephone conference. It was scheduled in light of the court's observation of the observed potential of a breach by the government, yes. What do you make of counsel's waiver argument? Well, that would apply only to what occurred at the sentencing proceeding, which I did include that in the supplemental briefing, the letter brief. The reason being that that came up in the context of cure. Was there a cure? In cure, you would consider the entirety of the record. As to the initial briefing, which was more focused on the withdrawal of the plea, that had already been denied at time of the sentencing hearing. We would not have proceeded to sentencing had that been granted, obviously. But since the withdrawal of the guilty plea was denied, and then the government made the statement twice about the resulting range being fair and appropriate. I concede that it does not appear in our principal brief, but I would submit it's relevant to the question of cure, to be brief. The question of prejudice came up, and I would again go back to the Martin decision out of this court, which provides that even if we can say that it's very improbable that the sentencing judge's sentence was affected by the breach, we still must honor the agreement of the parties and give the defendant the benefit of his bargain. Even if that can be said, and even if the breach were inadvertent, we still must be honoring the plea agreement and that which it contains. Just one final point. The case law provides that the plea agreements are to be interpreted in accordance with the reasonable expectation of the defendants, and we are asking no more than what the plea agreement says, a recommendation for level 14, which never occurred. Because that never occurred, we would submit that this court should reverse and remand for further proceedings, unless there are any other questions. Thank you. Counsel, we'll ask that you folks speak with the clerk about getting the transcript, and we'll ask the government to pay for the transcript. Thank you very much, Counsel, for your briefs and your argument. We'll take this under advisory. Thank you, Your Honor.